# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Counter Active, Inc., and
Robert Hutto,

Civil No. 07-3163 (DWF/AJB)

Plaintiffs/Counter-Defendants,

v.

**MEMORANDUM
OPINION AND ORDER**

Tacom, L.P., a Texas limited
partnership doing business as
Cosentino USA; Tacom Corp.,
an inactive/merged Florida corporation
doing business as Cosentino USA;
Tacom, Inc., doing business as
Cosentino USA also known as
Tacom, L.P.; and Roberto Contreras, Jr.,

Defendants/Counter-Claimants,

v.

Pete Valentine,

Counter-Defendant.

---

Brian L. Alexander, Esq., and John D. Holland, Esq., Dady & Garner, PA, counsel for
Plaintiffs/Counter-Defendants.

Daniel H. Charest, Esq., and J. Hoke Peacock, III, Esq., Susman Godfrey LLP; and
Nicole M. Siemens, Esq., and Terrence J. Fleming, Esq., Lindquist & Vennum PLLP,
counsel for Defendants/Counter-Claimants.

---

**INTRODUCTION**

This matter is before the Court pursuant to Defendants'[1] Renewed Motion to

Dismiss Second Amended Complaint.  In the Second Amended Complaint, Plaintiffs

allege the following causes of action:  (1) breach of contracts (Count I); (2) specific

performance of 2006 contract (Count II); (3) tortious interference with business

relationships (Count III); (4) rescission of promissory notes (Count IV); (5) accounting

(Count V); (6) declaratory judgment (Count VI); (7) unjust enrichment (Count VII);

(8) fraud in the inducement (Count VIII); (9) fraud (Count IX); (10) violation of the

Minnesota Franchise Act (Count X); (11) violation of the Minnesota Deceptive Trade

Practices Act (Count XI); (12) violation of the Minnesota Consumer Fraud Act

(Count XII); (13) violation of Florida Franchise Misrepresentation Act (Count XIII);

(14) violation of the Florida Deceptive and Unfair Trade Practices Act (Count XIV); and

(15) violation of the Florida Sale of Business Opportunity Act (Count XV).

In Plaintiffs' Opposition to Defendants' Renewed Motion to Dismiss Second

Amended Complaint, Plaintiffs agreed to dismiss Counts II, VII, VIII, IX, and XI.  At the

February 8, 2008 hearing on this matter, Plaintiffs further agreed to dismiss Count XII.  It

---

[1]     Plaintiffs Counter Active, Inc.  ("Counter Active") and Robert D. Hutto
(collectively "Plaintiffs"), have filed suit against Tacom, L.P., d/b/a Cosentino USA;
Tacom Corp., d/b/a Cosentino USA; Tacom, Inc., d/b/a Cosentino USA; and Roberto
Contreras, Jr. (collectively "Defendants" or "Cosentino").  Cosentino USA is a subsidiary
of Cosentino SA of Spain, which manufactures engineered stone slab products known as
SILESTONE®.

is undisputed that Counts IV, V, and VI, are ancillary to the present motion.[2]  Therefore,

only Counts I, III, X, XIII, XIV, and XV remain at issue here.  For the reasons set forth

below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

In April 1999, Robert D. Hutto, the President of Counter Active, met with Roberto

Contreras, Jr., a representative of Cosentino, in Florida to discuss the possibility of Hutto

becoming a distributor for Cosentino.  (Second Am. Compl. ¶¶ 16-17.)  Plaintiffs allege

that Contreras stated at that time that "current licensees of Tacom, Inc.'s SILESTONE®

business had been selling for $100,000.00 each, depending on the type, but that Robert

Hutto and Counter Active could obtain a SILESTONE® business for no fee," and that "a

licensee of the SILESTONE® business could expect to sell at least $200,000.00 per

month and up to or over $1,000,000.00 per month depending on the territory serviced and

the number of HOME DEPOT® stores that business handled."  (*Id.* ¶¶ 18-19.)

Thereafter, Plaintiffs allege that Contreras contacted Hutto by phone and

"described the SILESTONE® business opportunity as a process whereby the Huttos

would become Certified Installers, Certified Fabricators, and wholesale distributors of the

Products[,]" and stated that "Counter Active would become the exclusive Certified

Installer and Certified Fabricator of the Products in Counter Active's designated territory,

giving Counter Active the exclusive right to cut, fabricate, and install the Products in that

---

[2]        Defendants assert that the remedies contained in Count V and Count VI stand or
                                                                (Footnote Continued on Next Page)

territory." (*Id.* ¶¶ 23-24.) Plaintiffs also allege that Contreras stated that "Counter Active would serve as the distributor, exclusive Certified Fabricator and Certified Installer of the Products for customers of HOME DEPOT® Stores in Counter Active's designated territory and that Tacom, Inc. would not grant another business the right to sell the Products to, or serve as the Certified Fabricator or Certified Installer for, the HOME DEPOT® stores in Counter Active's designated territory." (*Id.* ¶ 25.) In addition, Plaintiffs allege that "Cosentino represented to Robert Hutto that Counter Active's territory would actually include the entire State of Florida." (*Id.* ¶ 26.) Plaintiffs assert that Cosentino's offer to Counter Active for the franchise was eventually made through its agents in Minnesota. (*Id.* ¶ 152.)

On November 27, 1999, Cosentino and Counter Active entered into a Distribution Agreement ("the 1999 Agreement") whereby Cosentino appointed Counter Active as Cosentino's exclusive Fabricator to purchase the SILESTONE® products from Cosentino and to promote, market, sell, install and service the SILESTONE® products for residential and small commercial projects within a specific territory,[3] and established quarterly sales goals for Counter Active. (*Id.* ¶ 41; Ex. A ¶ 1(a).) The 1999 Agreement states that "Cosentino [] shall not appoint any such Fabricators other than Fabricator and

---

(Footnote Continued From Previous Page)
fall with the underlying contract claims.
[3]      Counter Active's territory in the 1999 and 2001 Agreements included Hillsborough, Pinellas, and Sarasota Counties, Florida. Counter Active's territory in the 2003 and 2006 Agreements included Hillsborough, Pinellas, Sarasota, Pasco, Manatee,
(Footnote Continued on Next Page)

co-Fabricator.  Cosentino shall inform Fabricator from time to time as to the identity of any such co-exclusivity."  (*Id.*, Ex. A ¶ 1(a).)  The Agreement defines "Co-exclusive Fabricator" as "another Fabricator selected by Cosentino [] with regard to the Territory and subject to a distribution agreement containing similar terms and conditions as of this Agreement."  (*Id.*, Ex. A ¶ 1(c).)  As of the date of the 1999 Agreement, Cosentino had not selected a co-Fabricator.  (*Id.*)

The 1999 Agreement's term was for eighteen months from the date of the purchase of the first container.  (*Id.*, Ex. A ¶ 5.)  However, Cosentino reserved the right to terminate the agreement or the agreement's exclusivity on thirty-days' notice if the sales goals that were specified were not met.  (*Id.*, Ex. A ¶¶ 4, 5.)  Cosentino and Counter Active entered into subsequent similar Distribution Agreements with similar terms in 2001, 2003, and 2006.[4]  (*See id.*, Exs. B, C, D.)

Plaintiffs assert that over the years, Cosentino allowed Counter Active to operate under the assumption that Counter Active was the exclusive Certified Installer and Certified Fabricator of the SILESTONE® products in Counter Active's territory, and specifically in the HOME DEPOT® stores there.  Plaintiffs further allege that "Cosentino has permitted other SILESTONE® franchisees to market the Products and to install the Products in the counties and the HOME DEPOT® stores specifically designated as within

---

(Footnote Continued From Previous Page)
and Polk Counties, Florida.

[4]        The 2006 Distribution Agreement was signed on March 6, 2006.

(Footnote Continued on Next Page)

Counter Active's Territory."[5]  (*Id.* ¶ 47.)  Plaintiffs also assert, among other things, that Cosentino, through Quality Brand Marketing, its marketing agent, made false and disparaging statements about Counter Active and sought to direct business to Counter Active's competitors.  (*Id.* ¶ 75.)

The parties dispute how the 2006 Agreement ended.  Defendants contend that in 2006, Counter Active did not meet the sales goals specified in the Agreement and failed to pay for product that it purchased from Cosentino.  Defendants assert that the Agreement then expired on or about March 6, 2007, and Cosentino declined to enter into another Distributorship Agreement with Counter Active.  Plaintiffs contend that Cosentino terminated the 2006 Agreement before its expiration date and refused to renew the agreement without good cause.

On July 13, 2006, Counter Active filed suit against Cosentino in Florida state court.  In January 2007, Counter Active amended its Complaint, adding several causes of action, Hutto as a Plaintiff, and Contreras as a Defendant.  In February 2007, Defendants removed the case to federal court.  Thereafter, in June 2007, the case was transferred to this Court.  On December 19, 2007, Defendants filed the present motion.

## DISCUSSION

---

(Footnote Continued From Previous Page)

[5]     Plaintiffs now specifically assert that they discovered that Stone Systems of Orlando, LLC ("Stone Systems") was another SILESTONE® distributor active in Florida.   Defendants, however, point out that Counter Active never specifically mentions
(Footnote Continued on Next Page)

## I.      Standard of Review

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 1964-65.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 1965.

## II.     Count I – Breach of Contracts

Defendants assert that Minnesota's six-year limitations period applies to Plaintiffs'

---

(Footnote Continued From Previous Page)
Stone Systems in the Second Amended Complaint.

breach of contracts claim pursuant to the terms of the Distribution Agreements.

Defendants explain that they are not moving to dismiss the breach of contracts claim to

the extent that any breach arose within the applicable statute of limitations.  But

Defendants argue that the Court should dismiss Plaintiffs' claim to the extent that it

accrued before July 13, 2000.  In response, Plaintiffs assert only that the Court should not

dismiss its claims for breach of contract that arise on or after July 13, 2000.  The Court

therefore finds that the parties are not in dispute on this issue, and grants Defendants'

motion to dismiss Plaintiffs' claim for breach of contracts to the extent it accrued before

July 13, 2000.

### III.    Count III – Tortious Interference with Business Relationships[6]

To prove a tortious interference claim, a plaintiff must demonstrate:  (1) a business

relationship; (2) the tortfeasor's knowledge of the relationship; (3) an intentional and

unjustified interference with that relationship; and (4) damage to the plaintiff as a result.

*See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).  The

"business relationship [generally must be] evidenced by an actual and identifiable

understanding or agreement which in all probability would have been completed if the

defendant had not interfered."  *Id*. at 815.  Further, "a claim of tortious interference with a

business relationship requires proof that the plaintiff had a business relationship with

---

[6]    Although the parties originally disputed whether Minnesota or Florida law applies
to Plaintiffs' tort claims, at the February 8, 2008 hearing, Plaintiffs agreed with
Defendants that Florida law applies to Plaintiffs' tortious interference with business

(Footnote Continued on Next Page)

'identifiable customers.'" *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526 (Fla. Dist. Ct. App. 1997) (quoting *Ferguson Transp. Inc. v. N. Am. Van Lines*, 687 So. 2d 821, 821 (Fla. 1996)). "The cause of action cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large." *Id*. at 527.

Here, Defendants assert that Plaintiffs' claim must fail because Plaintiffs have not alleged they had a business relationship with "identifiable customers," and because Plaintiffs' allegation of a relationship between themselves and American Silestone, USA (New Jersey) and Tech Products, Inc. is conclusory and speculative. In addition, Defendants assert that Plaintiffs have not made any allegations regarding Cosentino's knowledge of the relationships or his intent to impede them.

In the Second Amended Complaint, Plaintiffs allege an interference with "current and anticipated business relationship[s]" with "customers and prospective customers" and with "American Silestone, USA (New Jersey), Tech Products, Inc., and other distributors." (Second Am. Compl. ¶¶ 104-05.) In addition, at paragraph 25, Plaintiffs allege that "Contreras, Jr. stated that Counter Active would serve as the distributor, exclusive Certified Fabricator and Certified Installer of the Products for customers of HOME DEPOT® Stores in Counter Active's designated territory." (*Id.* ¶ 25.)

The Court concludes that by specifically identifying American Silestone, USA, as a distributor, and by specifically referencing that Contreras had identified customers as

---

(Footnote Continued From Previous Page)
relationships claim.

"customers of HOME DEPOT® Stores in Counter Active's designated territory," Plaintiffs have specifically alleged a business relationship with "identifiable" customers and distributors that is more than a general allegation of relationship between the plaintiff and the public at large.  Therefore, Plaintiffs have met their burden in this regard.

Further, the Court concludes that the relationship alleged between Plaintiffs and American Silestone, USA, is not conclusory and speculative.  (*See id*. ¶ 52-55 (specifically alleging that "Counter Active was required to purchase Products from American Silestone, Inc. (New Jersey)").)  And the Court finds that Defendants' assertion that Plaintiffs have not made any allegations regarding Cosentino's knowledge of the relationships or his intent to impede them is incorrect.  (*See id.* ¶¶ 25 (indicating knowledge), 47 (indicating knowledge and intent), 52-55 (indicating knowledge and intent).)

Therefore, assuming all facts in the Second Amended Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court denies Defendants' motion to dismiss Count III.  At this stage, Plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face," and that "raise[s] a right to relief above the speculative level."  *Twombly*, 127 S. Ct. at 1964-65, 1974.  The Court notes, however, that even though Plaintiffs' claim passes the pleading requirements, this in no way indicates the likelihood that it will survive summary judgment.

## IV.     Count X – Violation of the Minnesota Franchise Act

The Minnesota Franchise Act states in relevant part as follows:

The provisions of sections 80C.01 to 80C.22 concerning sales and offers to sell shall apply when a sale or offer to sell is made in this state; when an offer to purchase is made and accepted in this state; or when the franchise is to be located in this state.

. . . [A]n offer to sell or to purchase is made in this state, whether or not either party is then present in this state, when the offer originates from this state or is directed by the offeror to this state and received by the offeree in this state.

Minn. Stat. § 80C.19, subds. 1, 2.  The Act defines "offer" or "offer to sell" as "every attempt to offer to dispose of, and every solicitation of an offer to buy, a franchise or interest in a franchise for value."  *Id*. § 80C.01, subd. 16.

Here, Counter Active alleges that Contreras first "discussed the opportunity to become a distributor for [Cosentino]" in Florida in April 1999.  (Second Am. Compl. ¶¶ 16-17.)  Counter Active also alleges that "Cosentino's offers of the franchise occurred by and through its agents in Minnesota."  (*Id*. ¶ 152.)

Defendants assert that Counter Active has not alleged that any offer to sell was made or accepted in Minnesota and therefore Plaintiffs' claim must fail.  Specifically, Defendants assert that the first contact with Counter Active occurred in April 1999 in Florida, and that this communication should be construed as the "offer" under the Act.  In addition, Defendants assert that this claim must be dismissed because it is time-barred.  Specifically, Defendants contend that the actions alleged by Plaintiffs at paragraph 170 in the Second Amended Complaint relate only to the initial decision to enter into the 1999 Agreement.

In response, Plaintiffs assert that the Minnesota Franchise Act applies because an offer to sell was made in Minnesota through Cosentino's agents.  Also, citing *Jerry's Serv., Inc. v. Freshway, Inc.*, No. Civ. 03-2889 (D. Minn. Sept. 24, 2003), Plaintiffs assert that their claim is not time-barred because Minnesota's "discovery rule" allows for a party to bring a claim under the Act "within three years of when the party discovered the fraud."[7]

The Minnesota Franchise Act contains a three-year statute of limitations.  Minn. Stat. § 80C.17, subd. 5.  In Minnesota, the "discovery rule" provides that "a cause of action for fraud does not accrue until the facts constituting the fraud could and ought to have been discovered with reasonable diligence."  *Randall v. Lady of Am. Franchise*, No. Civ. 04-3394, 2005 WL 2709641, at *2 (D. Minn. Oct. 21, 2005) (citing *Kassan v. Kassan*, 400 N.W.2d 346 (Minn. Ct. App. 1987); Minn. Stat. § 541.05(6)).  However, "the discovery rule does not apply where a plaintiff has failed to specifically plead facts relating to his discovery of the cause of action."  *Flowers v. Bennett*, No. C1-87-1648, 1987 WL 28329, at *2 (Minn. App. Dec. 22, 1987) (citing *Kelly v. Kelly*, 304 Minn. 237, 243-44, 229 N.W.2d 526, 530 (1975)).

Here, Plaintiffs do not allege facts in the Second Amended Complaint relating to when they learned of any of the alleged violations.  Therefore, the discovery rule does not

---

[7]     Plaintiffs concede that any Minnesota Franchise Act claim based on a failure to register prior to July 13, 2003, or a failure to provide proper disclosures to Counter Active prior to July 13, 2003, should be dismissed.

(Footnote Continued on Next Page)

apply and Plaintiffs do not receive the benefit of a tolling of the statute of limitations. Thus, even assuming that the offer to sell was made through Cosentino's agents in Minnesota sometime before the 1999 Agreement was signed, Plaintiffs' claim is time-barred based on the three-year statute of limitations, regardless of what other allegations may have occurred in the three-year period preceding the commencement of this suit.  Accordingly, the Court grants Defendants' motion to dismiss Count X.

## V.     Count XIII – Violation of the Florida Franchise Misrepresentation Act

Under the Florida Franchise Misrepresentation Act, it is a violation to intentionally misrepresent "or fail to disclose efforts to sell or establish more franchises or distributorships than is reasonable to expect the market or market area for the particular franchise or distributorship to sustain."  Fla. Stat. § 817.416(2)(a)(3).[8]

Defendants assert that Plaintiffs' claim under the Florida Franchise Misrepresentation Act should be dismissed because Fla. Stat. § 95.11(3)(f) imposes a four-year limitations period on "[a]n action founded on a statutory liability," and here, Plaintiffs' allegations relating to any misrepresentations took place in 1999.  Also, Defendants assert that Plaintiffs cannot claim that the actions were ongoing because

(Footnote Continued From Previous Page)

[8]     In the Second Amended Complaint, Plaintiffs do not reference this specific subsection of the Act.  Instead, Plaintiffs generally allege:  "In the alternative, this is an action by Plaintiffs, Counter Active and Robert Hutto, against Cosentino for violation of the Florida Franchise Misrepresentation Act ("FFA") pursuant to Section 817.416, Florida Statutes."  (Second Am. Compl. ¶ 185.)

(Footnote Continued on Next Page)

Plaintiffs did not make such allegations in the Second Amended Complaint.[9]  In addition,

Defendants assert that the allegations in the Second Amended Complaint do not support

Plaintiffs' theory that Cosentino secretly appointed Stone Systems to operate within

Counter Active's territory.

In response, Plaintiffs assert that because Cosentino did not disclose Stone

Systems as a distributor, Cosentino violated the Act, and that Plaintiffs provided support

for such claim in the Second Amended Complaint.  Further, Plaintiffs assert that their

claim is not time-barred because Cosentino was obligated to disclose to Counter Active

its "efforts to sell or establish more franchises or distributorships than is reasonable" with

the execution of each agreement that was made (*i.e.*, in 1999, 2001, 2003, and 2006).

Therefore, Plaintiffs assert that Defendants' motion should be denied with respect to

those violations alleged to have occurred after July 13, 2002.

The Court disagrees with Defendants' assertion that Plaintiffs did not make

allegations supporting Plaintiffs' theory or indicating that the Defendants' actions were

ongoing.  Plaintiffs allege that Cosentino's misrepresentations included statements that

"Counter Active would be the exclusive Certified Installer and Certified Fabricator of the

Products in Counter Active's Territory" and that "Counter Active would serve as the

---

(Footnote Continued From Previous Page)

[9]      Defendants further assert that any reliance on post-2002 representations made by
Defendants are unreasonable because Plaintiffs had worked within similar Distribution
Agreements for years.

distributor, exclusive Certified Fabricator and Certified Installer of the Products for customers of HOME DEPOT® Stores in Counter Active's Territory and that Cosentino would not grant another business the right to sell the Products to, or serve as the Certified Fabricator or Certified Installer for, the HOME DEPOT® stores in Counter Active's Territory[.]"  (Second Am. Compl. ¶ 190(a)-(b).) Plaintiffs also allege that "Cosentino has permitted other SILESTONE® franchisees to market the Products and to install the Products in the counties and the HOME DEPOT® stores specifically designated as within Counter Active's Territory."  (*Id.* ¶ 47.)    These allegations support Plaintiffs' theory.

In addition, the fact that these and other similar representations were made in the Agreements themselves supports the argument that Defendants' actions were ongoing. Furthermore, Plaintiffs allege that Cosentino's misrepresentations "materially induced Robert Hutto and Counter Active into *continuing the operation* of a franchise[.]"  (*Id.* ¶ 191 (emphasis added).)  This statement indicates Plaintiffs' reliance not only on the misrepresentations that occurred before the 1999 Agreement was signed, but also on the continued misrepresentations made in the subsequent Agreements.

Therefore, assuming all facts in the Second Amended Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court denies Defendants' motion to dismiss Count XIII with respect to those violations alleged to have occurred after July 13, 2002.  At this stage, Plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face," and that "raise[s] a right to relief above the speculative level."  *Twombly*, 127 S. Ct. at 1964-65,

1974.  The Court grants Defendants' motion to dismiss Count XIII with respect to those violations alleged to have occurred before July 13, 2002.

## VI.   Count XIV – Violation of the Florida Deceptive and Unfair Trade Practices Act

Under Florida law, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . declared unlawful."  Fla. Stat. § 501.204(1).  A plaintiff asserting a Florida Deceptive and Unfair Trade Practices Act claim must "not only plead . . . . that the conduct complained of was unfair and deceptive, but he must also plead . . . . that he . . . was aggrieved by the unfair and deceptive act."  *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003) (quotations omitted).

Similar to Count XIII, Defendants assert that Plaintiffs' claim brought pursuant to the Florida Deceptive and Unfair Trade Practices Act is time-barred by the four-year limitations period expressed in Fla. Stat. § 95.11(3)(f) and should be dismissed because Plaintiffs' allegations only relate to events that took place in 1999.  In response, Plaintiffs assert that they have met their burden[10] and assert that their claim is not time-barred by

---

[10]     Specifically, citing paragraphs 47, 52, 55, 64-65, 72-75, and 199 of the Second Amended Complaint, Plaintiffs assert that Cosentino (1) unlawfully appointed additional distributors in Counter Active's territory; (2) failed to deliver product needed by Counter Active for the operation of its business; (3) instructed suppliers to stop selling product to Counter Active; (4) demanded payment for product delivered to Counter Active on a consignment basis but not yet sold by Counter Active; (5) knowingly submitted erroneous invoices to Counter Active; and (6) utilized paid advertising agents to defame Counter Active's business.  In addition, Plaintiffs assert that reasonable reliance should not be part
(Footnote Continued on Next Page)

the four-year statute of limitations because the alleged violations have occurred in the

four years prior to the filing of the Complaint.  Therefore, Plaintiffs contend that

Defendants' motion to dismiss should be denied with respect to those violations alleged

to have occurred after July 13, 2002.

The Court finds that Plaintiffs have met their burden in pleading their Florida

Deceptive and Unfair Trade Practices Act claim.  In the Second Amended Complaint,

Plaintiffs specifically allege:

> Through the following actions, Cosentino knowingly engaged in unfair
> methods of competition, unconscionable acts or practices, and/or unfair or
> deceptive practices in violation of Sections 501.203(7) and 501.204(1),
> Florida Statutes:
>
> (a)  Cosentino failed to register as a franchisor with the State of
>      Minnesota's Commissioner of Commerce *at any time during the
>      terms of the Contracts*;
>
> (b)  Cosentino failed to present Counter Active or Robert Hutto with
>      a [Uniform Franchise Offering Circular] UFOC or with any
>      document containing the information required to be given a
>      prospective franchisee *prior to entering into any of the
>      Contracts*;
>
> (c)  Cosentino made misrepresentations and/or omissions regarding
>      the Cosentino business opportunity, the franchise system, the
>      Territory, the Products and process for ordering the Products,
>      and the costs involved in the business opportunity or franchise
>      system;
>
> (d)  Cosentino failed to disclose material information, willfully

---

(Footnote Continued From Previous Page)
of the analysis here, but instead the question is whether the practice was likely to deceive
a consumer acting reasonably in the circumstances.

> withheld material information, and mischaracterized the nature
> of the SILESTONE franchise system in order to induce Counter
> Active or Robert Hutto into *entering into the Contracts*.

(Second Amend. Compl. ¶ 199 (emphasis added).)  In addition, Plaintiffs allege that

"Counter Active would not have entered into the Contracts had the information been

properly disclosed, and as a direct and proximate result of Cosentino's actions, Plaintiffs

have been damaged."  (*Id.* ¶ 200.)  Therefore, Plaintiffs have pled that Cosentino's

conduct was "unfair and deceptive" and that Plaintiffs were "aggrieved by the unfair and

deceptive act[,]" thus meeting their pleading requirements.  *See Haun*, 285 F. Supp. 2d at

1307; *see also Twombly*, 127 S. Ct. at 1964-65, 1974.

In addition, the Court concludes that Plaintiffs' allegations do not limit themselves

to events that took place in 1999.  Instead, they are clear to reference "contracts" in

plural, and paragraph (b) references "any of the Contracts."  Therefore, to the extent the

allegations relate to events that took place after July 13, 2002, Plaintiff's claim is not

time-barred, and Defendants' motion is denied.  To the extent that the allegations relate to

events that took place before July 13, 2002, Defendants' motion is granted.

## VII.    Count XV – Violation of the Florida Sale of Business Opportunity Act

The Florida Sale of Business Opportunity Act states, in relevant part, as follows:

> If a business opportunity seller uses untrue or misleading statements in the
> sale of a business opportunity, fails to give the proper disclosures in the
> manner required by this part, or fails to deliver the equipment, supplies, or
> products necessary to begin substantial operation of the business within 45
> days of the delivery date stated in the business opportunity contract, or if
> the contract does not comply with the requirements of this part, the
> purchaser may, within 1 year of the date of execution of the contract and

upon written notice to the seller, rescind the contract and shall be entitled to receive from the business opportunity seller all sums paid to the business opportunity seller.

Fla. Stat. § 559.813(1).  "Any purchaser injured by a violation of this part, or by the business opportunity seller's breach of a contract subject to this part or any obligation arising therefrom, may bring an action for recovery of damages, including reasonable attorney's fees."  *Id*. § 559.813(3).  For the purposes of the Act:

"Business opportunity" means the sale or lease of any products, equipment, supplies, or services which are sold or leased to a purchaser to enable the purchaser to start a business for which the purchaser is required to pay an initial fee or sum of money which exceeds $500 to the seller, and in which the seller represents:

. . . .

3.  That the seller guarantees that the purchaser will derive income from the business opportunity which exceeds the price paid or rent charged for the business opportunity or that the seller will refund all or part of the price paid or rent charged for the business opportunity, or will repurchase any of the products, equipment, supplies, or chattels supplied by the seller, if the purchaser is unsatisfied with the business opportunity; or

4.  That the seller will provide a sales program or marketing program that will enable the purchaser to derive income from the business opportunity, except that this paragraph does not apply to the sale of a sales program or marketing program made in conjunction with the licensing of a trademark or service mark that is registered under the laws of any state or of the United States if the seller requires use of the trademark or service mark in the sales agreement.

*Id*. § 559.801(1)(a).

Defendants assert that Plaintiffs' Florida Sale of Business Opportunity Act claim should be dismissed because the claim is time-barred under section 559.813(1).  Further,

Defendants specifically assert that the Act protects only those transactions that enable a purchaser to "start" a business, and here, those transactions could only have been made in the context of the 1999 Agreement.  Defendants assert that reliance on allegations made in the context of the 1999 Agreement would be in conflict with the limitations period.[11]

Plaintiffs contend that Cosentino violated the Act by misrepresenting the territory and exclusivity available to Counter Active and by failing to disclose to Counter Active that Stone Systems would be competing in Counter Active's territory.  Plaintiffs assert that their claim is not time-barred because the time-bar only applies to requests for rescission, and Plaintiffs are not seeking rescission, but instead are seeking damages. Therefore, Plaintiff asserts that the four-year statute of limitations under Fla. Stat. § 95.11(3)(f) applies.

Regardless of whether the limitations period is one year or four years, the Court agrees with Defendants that Plaintiffs' claim under the Florida Sale of Business Opportunity Act must be dismissed.  The Act protects only those transactions that enabled Counter Active to "start" a business.  *See* Fla. Stat. § 559.801(1)(a) (stating that under the

---

[11]   Defendants also assert that Plaintiffs' claim fails on the merits because the Act provides a private right of action to a purchaser of a "business opportunity" if the seller uses untrue or misleading statements in the sale of a business opportunity.  Here, Defendants assert that Plaintiffs have not alleged facts to support this.  In addition, Defendants assert that Plaintiffs have not alleged there was payment of any "initial fee" in exchange for the right to participate in the 1999 Agreement, that Cosentino promised to purchase the products made by Counter Active based on buyer satisfaction, or that Cosentino guaranteed that Counter Active would derive income from the purchase that would exceed the price paid.

(Footnote Continued on Next Page)

Act, "'[b]usiness opportunity' means the sale or lease of any products, equipment, supplies, or services which are sold or leased to a purchaser *to enable the purchaser to start a business* for which the purchaser is required to pay an initial fee or sum of money which exceeds $500 to the seller") (emphasis added); *see also Batlemento v. Dove Fountain, Inc.*, 593 So. 2d 234, 239 (Fla. Dist. Ct. App. 1991) (concluding that the Business Opportunities Act does not apply).  Here, the parties do not dispute that the business started in 1999.  Therefore, any actions or representations that support a claim under the Act would have had to have been prior to the 1999 Agreement and are time-barred regardless of whether a one-year or a four-year limitation period applies. Thus, the Court grants Defendants' motion to dismiss Count XV.

## VIII.  Rule 9(b) Pleading Requirements

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Eighth Circuit has explained that, for Rule 9(b), "'circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby . . . . [C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997) (quotations omitted).

---

(Footnote Continued From Previous Page)

Here, Defendants generally assert that the fraud-based tort and statutory claims should also be dismissed for failing to meet the Rule 9(b) pleading requirements. For those claims still surviving, the Court denies Defendants' motion to dismiss on this basis. Assuming all facts in the Second Amended Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court finds that the Second Amended Complaint does contain sufficient allegations to meet the Rule 9(b) pleading requirements.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that**:**

1.      Defendants' Renewed Motion to Dismiss Second Amended Complaint (Doc. No. 49) is **GRANTED IN PART AND DENIED IN PART** as follows:

a.      Defendants' Motion to Dismiss Plaintiffs' claim for breach of contracts (Count I) is **GRANTED** to the extent it accrued before July 13, 2000.

b.      Defendants' Motion to Dismiss Plaintiffs' claim for specific performance of 2006 contract (Count II) is **GRANTED**. Count II of the Second Amended Complaint (Doc. No. 31) is **DISMISSED WITH PREJUDICE**.

c.      Defendants' Motion to Dismiss Plaintiffs' claim for tortious interference with business relationships (Count III) is **DENIED**.

d.      Defendants' Motion to Dismiss Plaintiffs' claim for unjust

enrichment (Count VII) is **GRANTED**.  Count VII of the Second Amended

Complaint (Doc. No. 31) is **DISMISSED WITH PREJUDICE**.

      e.      Defendants' Motion to Dismiss Plaintiffs' claim for fraud in

the inducement (Count VIII) is **GRANTED**.  Count VIII of the Second

Amended Complaint (Doc. No. 31) is **DISMISSED WITH PREJUDICE**.

      f.      Defendants' Motion to Dismiss Plaintiffs' claim for fraud

(Count IX) is **GRANTED**.  Count IX of the Second Amended Complaint

(Doc. No. 31) is **DISMISSED WITH PREJUDICE**.

      g.      Defendants' Motion to Dismiss Plaintiffs' claim for violation

of the Minnesota Franchise Act (Count X) is **GRANTED**.  Count X of the

Second Amended Complaint (Doc. No. 31) is **DISMISSED WITH

PREJUDICE**.

h.      Defendants' Motion to Dismiss Plaintiffs' claim for violation of the Minnesota Deceptive Trade Practices Act (Count XI) is **GRANTED**. Count XI of the Second Amended Complaint (Doc. No. 31) is **DISMISSED WITH PREJUDICE**.

i.      Defendants' Motion to Dismiss Plaintiffs' claim for violation of the Minnesota Consumer Fraud Act (Count XII) is **GRANTED**.  Count XII of the Second Amended Complaint (Doc. No. 31) is **DISMISSED WITH PREJUDICE**.

j.      Defendants' Motion to Dismiss Plaintiffs' claim for violation of the Florida Franchise Misrepresentation Act (Count XIII) is **DENIED** with respect to those violations alleged to have occurred after July 13, 2002, and **GRANTED** with respect to those violations alleged to have occurred before July 13, 2002.

k.      Defendants' Motion to Dismiss Plaintiffs' claim for violation of the Florida Deceptive and Unfair Trade Practices Act (Count XIV) is **DENIED** with respect to those violations alleged to have occurred after July 13, 2002, and **GRANTED** with respect to those violations alleged to have occurred before July 13, 2002.

l.      Defendants' Motion to Dismiss Plaintiffs' claim for violation of the Florida Sale of Business Opportunity Act (Count XV) is **GRANTED**.  Count XV of the Second Amended Complaint (Doc. No. 31)

is **DISMISSED WITH PREJUDICE**.


Dated:  March 21, 2008          s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court